**JAY E. MONICO,** (CA SBN: 315647)
Sevens Legal, APLC
3555 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 297-2800
Facsimile: (619) 346-4226
Email: jay@sevenslegal.com

Attorney for Defendant
**COREY HORAN**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal No.: 1:24CR0005-001 |
| Plaintiff, | **SENTENCING MEMORANDUM** |
| vs. | |
| **COREY HORAN,** | |
| Defendant. | DATE: June 10, 2024<br>TIME: 3:00 p.m. |

**SENTENCING MEMORANDUM**

COREY HORAN, the Defendant in this case, by and through his counsel, Jay E. Monico, submits the following Sentencing Memorandum for the Court to consider before imposing his sentence.

///

///

///

///

///

# I.

## BACKGROUND INFORMATION REGARDING MR. HORAN

MR. HORAN was born on January 13, 1974, in San Diego, California. Both of his parents currently reside in Oceanside, California. MR. HORAN has four brothers, all of which resides very close to San Diego County. MR. HORAN family provides him with an amazing and strong support system.

MR. HORAN attended school in San Diego County. He graduated from Poway High School. MR. HORAN continued his education by enrolling at Palomar College where he attended general education classes. Afterwards in 1998, MR. HORAN attended San Diego City College where he obtained his electrician certificate.

In 1996, MR. HORAN commenced his full-time employment at the University of California at San Diego. He's worked there for a total of 28 years. His employer is aware of his charges in this case and has been very flexible with his work scheduled to accommodate his time to help resolve this case. To say that MR. HORAN has an excellent employment history would be an understatement.

MR. HORAN married his high school sweetheart, Andrea Fry. Unfortunately, they grew apart and filed for divorce after only a couple of years. They remain friends to this day. MR. HORAN's and Ms. Fry's friendship flourished. They found out that they were better apart than together.

MR. HORAN met, and married Autumn Auston and they had a son, Kaden. They remained married until Kaden was about three and a half years old. At first the couple shared equal physical custody. However, within the first year of their separation, both parents decided that it was in their son's best interest for MR. HORAN to have full custody. MR. HORAN has been Kaden's primary caretaker since. Kaden has a great relationship with his mother, but he never returned to live with her. Ms. Auston is currently remarried and has twin toddlers. She wrote a very

beautiful letter in support of MR. HORAN. Ms. Auston is aware of the charges against MR. HORAN. The letter describes him as an amazing father. More importantly, she mentions the amount of trust she has for MR. HORAN to take care of her twin toddlers, one of which is being treated for autism. The letter describes the man that is not a great father to their son but also a man who has an amazing support system. Kaden is currently seventeen years old. Ms. Auston has entrusted MR. HORAN to take care of Kaden for almost fourteen years after their separation/divorce, as well as entrusting him to care for her twin toddler sons from her current marriage.

MR. HORAN is currently in a relationship with Rebecca Saint, and they have a two-year-old daughter, Victoria. Ms. Saint resides in Northern California, which is an eight-hour drive from San Diego, California. MR. HORAN makes every effort to visit them a couple of times per month. Ms. Saint plans to relocate to San Diego to be with MR. HORAN and together raise their daughter.

Prior to being involved in the instant offense, MR. HORAN and his son moved to a different school zone. At this time, his son was transferring from sixth to seventh grade. The move affected his son because he had to leave close friends and try to make new ones. Then COVID-19 hit. The pandemic caused Kaden to become isolated. Once the situation with COVID settled the neighborhood began parading on the weekends. The parades became a positive event for Kaden and MR. HORAN. They met different type of people to include Trump supporters. It was through these people and his son's affinity for Law and Order, and similar shows, that prompted MR. HORAN to plan and take his son to Washington, D.C. for him and his son to attend the rallies. MR. HORAN viewed this trip as a reward for his son for having endured all the changes from their recent move and dealing with the isolation suffered due to the COVID-19 pandemic. MR. HORAN also thought this

could be an amazing history lesson for his son. He would have never made the trip if he foresaw what ended up happening.

January 6, 2021, was the day that changed MR. HORAN's and his son's life forever. MR. HORAN and his son attended some rallies. His son was in awe of everything happening around him. MR. HORAN was cognizant that there were a lot of people congregating at the events. He made sure to keep his son close. He feared that he might be separated and would not be able to find his son. As they met more and more people his apprehensions subsided. One of many people they met were some off-duty police officers. In their conversations, MR. HORAN realized this was a good thing that he brought his son too. The day was very cold and soon they decided to return to their hotel room to rest and warm up.

MR. HORAN's brother and nice also came along for the trip. They were also at the rallies. They returned to the hotel with MR. HORAN and his son. While they rested MR. HORAN's son saw people pass by and it seemed they were heading to another rally. His son wanted to go. MR. HORAN complied and took his son into what appeared to be a wave of people. They ended up at the Capitol grounds. The Capitol grounds were filled with what seemed like a sea of people. While at the Capitol grounds they met and talked to quite a number of people. MR. HORAN was happy that his son was really enjoying and taking in everything that was going on. They followed a crowd and ended up on the steps of the Capitol building as they approached an open door. At first, MR. HORAN was hesitant because his first concern was that there were a lot of people, and he did not want to get separated from his son. They eventually made it into the building, and both were in awe of being inside the Capitol building. There was so much going on and all MR. HORAN only focus was not to lose his son. So much so that it took him, what seemed like an eternity, to realize something was not right. All of a sudden, he got the smell of gas and smoke, and he noticed a few officers maintaining a perimeter and realized

they shouldn't be there.  But it was hard to get his bearings and figure out which way to go.  He was able to notice concern and fear in some of the officers. He and his son exited the building. He told one of the officers he felt sorry for them due to all this chaos.

All the time he was in the Capitol grounds, and then in the Capitol building, MR. HORAN did not know what was happening.  It wasn't until shortly after they exited the building that MR. HORAN got calls from his family telling him that people stormed the Capitol and at least one person had been killed. MR. HORAN was in disbelief and suddenly he realized that they had just been in there and what might have happened if they did not leave.

MR. HORAN was completely cooperative and pled guilty to a lesser charge at the first possible moment.  This case happened during COVID-19; things moved slower during that time.  He is hopeful the court exercises leniency on him when imposing judgement. His family stands by him, and they remain fully supportive in assisting MR. HORAN in rehabilitation and coping with the effects of the instant offense.  MR. HORAN is taking this experience as a life lesson and learned to be more aware and alert when around large crowds of people.  He takes full responsibility for entering and not leaving the Capitol building sooner. If he knew what was happening, he would never have entered to begin with.  Custodial time is not necessary to aid in his rehabilitation, he has already grasped the lessons, obstacles, and consequences of his inactions.

MR. HORAN is genuinely remorseful and has never made an excuse for his inactions.  To the contrary he has owned up and saved the government resources in their prosecution of this case.  He wrote a letter, which is also being provided as an attachment to this memorandum. In the letter, he expresses his sincere apologies and mentions how this whole event was and is out of his character. He accepts responsibility for what he allowed him and his son to temporarily participate in.  He

feels he and his son being there added two more people to the over chaos. If he could go back, he would not go into the Capitol. MR. HORAN is also taking this experience to show his son that a person must be responsible and own up to their actions and not make excuses for someone's shortcoming. MR. HORAN is still trying to show his son that through this bad situation, a good lesson can be learned.

## II.
## STATEMENT OF FACTS AND PLEA AGREEMENT

A Complaint was filed against MR. HORAN on August 7, 2023. MR. HORAN was arrested on August 9, 2023. MR. HORAN's arraignment was on August 29, 2023. On January 3, 2024, an Information was lodged against MR. HORAN, and he was arraigned on the Information on January 11, 2024. MR. HORAN pled guilty on February 1, 2024.

MR. HORAN entered into a plea agreement with the US Attorney's Office, filed on February 1, 2024. In the plea agreement the base offense level is calculated at four with an adjustment for specific offense characteristic, an adjustment for Acceptance of Responsibility, and an adjustment for zero criminal history points, for an adjusted base offense level of 2.

1. Base offense level [USSG §2B2.3]                                        4
2. Specific Offense Characteristic [USSG §2B2.3(b)(1)(A)]                 +2
3. Acceptance of Responsibility [USSG § 3E1.1]                            -2
4. Zero Criminal History Points [USSG § 4C1.1]                            -2
   **TOTAL ADJUSTED OFFENSE LEVEL**                                        2

MR. HORAN is permitted to seek downward departures. MR. HORAN respectfully requests that the court exercise its judicial discretion in determining an appropriate sentence.

///
///

## III.
## ADJUSTMENTS AND DEPARTURES

### A. BASE OFFENSE LEVEL

Per the Plea Agreement, both parties have agreed that according to §2B2.3 of the Sentencing Guidelines, MR. HORAN falls under the base offense level of 4

### B. SPECIFIC OFFENSE CHARACTERISTIC

Per the Plea Agreement, both parties had agreed to recommending a two (2) level upward adjustment, under USSG § 2B2.3(b)(1)(A).

### C. ACCEPTANCE OF RESPONSIBILITY

The United States, the MR. HORAN, and the Probation Department are all in agreement that MR. HORAN's admissions of his involvement in the instant offense by his plea of guilty meets the requirements of this provision. Therefore, MR. HORAN merits a two (2) level downward departure pursuant to USSG § 3E1.1.

### D. ZERO CRIMINAL HISTORY POINTS

Per the Plea Agreement, both parties had agreed to recommending a two (2) level downward adjustment, under USSG § 4C1.1, as well as probation officer is also recommending this departure.

### E. COMBINATION OF CIRCUMSTANCES

The defense requests that the Court consider and take under submission the below outlined Departures and consider them in whole and in part in order to assist the Court in determining an appropriate sentence for MR. HORAN.

1. MR. HORAN behaved exceedingly well under Pretrial Services supervision.
2. MR. HORAN is over 40 years old and presents less risk of recidivism; MR. HORAN is an excellent parent; strong family and community support help aid in his rehabilitation; and MR. HORAN is very unlikely to reoffend and poses no danger to the public.

3. This is MR. HORAN's first conviction; no prior criminal history justifies a below-guideline sentence; excellent employment history and extraordinary family circumstances where incarceration would have harsh effect on innocent family members.

## IV.
## SENTENCING LETTERS

1. Letter from Corey Horan (Attachment A)
2. Letter from Autumn Austin Osorio (Attachment B)
3. Letter from Pedro Macedo (Attachment C)

## V.
## SENTENCING ANALYSIS

For all the reasons stated above, MR. HORAN asks this Court to sentence him as follows:

1. MR. HORAN's adjusted base offense level should be computed at level four (4).
2. MR. HORAN should receive a two (2) level upward adjustment for Specific Offense Characteristic.
3. MR. HORAN should receive a two (2) level reduction for Acceptance of Responsibility.
4. MR. HORAN should receive a two (2) level downward adjustment for 4C1.1 for Zero Criminal History Score.
5. MR. HORAN requests the court agree with the departures and grant him a further reduction under Combination of Circumstances.

///

///

///

Therefore, it is respectfully requested that MR. HORAN be sentenced to a credit-for-time-served custodial sentence, followed by a one-year period of probation, $25.00 penalty assessment and restitution in the amount of $500.00 and no additional fine. It is further requested that MR. HORAN's probation be transferred to the Southern District of California.

**Dated:** <u>May 30, 2024</u>     Respectfully submitted,

<u>/s/ JAY E. MONICO</u>
JAY E. MONICO, Attorney for
Defendant COREY HORAN